May it please the Court, my name is Philippe Duelsauvers, D-W-E-L-S-H-A-U-V-E-R-S, and I represent Petitioner Rosa Delicia Galindo De Rodriguez. The main issue in this case is whether the petitioner, who is a lawful permanent resident, is eligible to apply for cancellation of removal. The Board of Immigration Appeal concluded that the petitioner was not eligible to apply for cancellation because at the time her removal proceedings commenced in 2005, she had not, quote, resided in the United States continuously for seven years after having been admitted in any statutes. We know that the notice to appear stops the running of time, is that correct? Yes, Your Honor, it does. But when does it start? I have a few questions on that. As far as I can tell from looking at this rather complicated record, your client's first entry was on June 12, 1979. Am I right about that? Yes, Your Honor, it was the first. On what ground did she come in at that time? It looks like she came in on a non-immigrant crossing card. Is that right, too? Yes, Your Honor. So that gives her the opportunity to stay in the United States for 72 hours maximum, and she can't go farther than 25 miles in the country. Am I right about that? Yes, Your Honor, you're right. So am I right in concluding from that that she was not admitted at that time? She was admitted, Your Honor. How could she be admitted in the legal sense of that term when all she had was a crossing card that gave her 72 hours and 25 miles? Yes, I will answer to the argument. If you look at the Ray Eduardo Blancas Lara, the BIA in the year 2002, mentioned regarding the same situation that it was an admission. The person, Blancas, entered with a border crossing card, and yet both considered that he was admitted. In what case is that? It's Ray Eduardo Blancas Lara. What is 23 INN 450A, BIA 2002. And I cited that in the additional citations, 23 AG, I sent to the court a few weeks ago. Oh, 28 AG letter? Yes, the first one. What's the date of that case? The date of that case was the year 2002. You know, 28 J letters involving cases that are that old, I mean, that's ridiculous. Those things ought to be brought to our attention earlier if you're intending to rely on them. The second, well, then what did she do when she came in on that 72-hour pass? Did she stay here? The first time in 79, no, but she came a few times. But the relevant matter is when she came in 1990 again with a border crossing card. Well, again, that's a border crossing card. That's a 72-hour, some people might call it a parole, into the country with, again, a 25-mile limitation. Am I right about that? Well, she was admitted as a border crossing card, but this time she did not. And she violated that? Absolutely, you are correct. She violated that. And she stayed in the country then? That's correct. Now, when she came in again on 12-23-96, that was on an advanced parole. Yes, Your Honor, that's correct. So what I understand from the case law is that a parole is not the same as an admission. That's correct, Your Honor. So she wasn't admitted then. So when was she admitted as far as you're concerned? As far as the case is concerned, the starting point for the 7-year would start in 1990 when she was admitted with a border crossing card. Was she legally and lawfully admitted that day? She was. She was because, I mean, she had a border crossing card. And, again, the – Well, that's kind of a playground use of the term admitted, isn't it? I mean, admission has a lot more legal consequences than just being allowed to come in for 72 hours and then leave. That's correct. But, again, it's what the board mentioned in Blancas Lara that, yes, the Blancas who came with a border crossing card was deemed to be admitted. There was an admission at the time. Now, the statute requires admission in any status. She goes out of status after 72 hours because she stays longer than she could. But I think as a technical matter, when she comes in on the border crossing card, she's coming in legally, and she's been admitted. That's correct, Your Honor. However, to go back to the case in J. Eduardo Lamas, the BIA recognized that even if she fell out of the status, still we can have the starting point of the admission in 1990. And that's on page 459 of the BIA decision. Or rather, on page 460 and 61, and I would like to cite and read, however, Congress easily have written section 248-2 to include maintenance of status as a prerequisite for relief, but it chose only to require seven years of continuous residence after admission to the United States. Moreover, the service has not convinced us that accepting the plain meaning of the statute would lead to an absurd statute. As noted by the respondent, in many instances, Congress has provided relief for aliens who fell out of status at some point during their residency in the United States. My understanding of the government's argument is not that she was not admitted in some status when she comes in pursuant to the border crossing. My understanding of the government's argument is rather that when she leaves for that one period of just a little under two weeks in 1996-97 to visit her sick mother in Mexico, that that interrupts the continuous status because, according to the government, when she's coming back in, she's paroled in rather than admitted. Would you respond to that argument? Yes, Your Honor. Because I think that's the argument the government's making. Oh, yes. And I understand the argument, Your Honor. And I'm going to gladly respond to that. We have the case called Matter of Arabeli that I cited in my citation because it was a case that came out in 2012 before the Board of Immigration Appeal. In the Matter of Arabeli 25 INN Decision 7071 BIA 2012, the Board set the principle when a person leaves the United States temporarily under a grant of advance parole, there is no departure. And if there is legally no departure, it means that the person legally never left the United States. Therefore, our argument is that the trip to Mexico did not interrupt her period of residing into the United States, a period which began on May 12, 1990. What constitutes residence? In one sense, she was resident in Mexico for 13 days. So under the law, what is continuous residence? What do you have to have to show residence? Yes. To answer to that question, Your Honor, I would go back and refer back to Ray Eduardo Blancas Lara. And the BIA defined the residence as the principal place of about or where you stay usually. And that's the Board mentioned that Blancas Lara, after he came with a border crossing card and came out of legal status, stayed in the United States, maybe filed taxes, maybe whatever it is. The residence, it means where you stay usually most of the year. That would be generally the habitual place of about and dwelling. And for petitioner, the petitioner, her place was usually in the United States after she came in 1990. Is there some time period in the cases? In other words, if she was in Mexico for three months, does that no longer continuous residence? You're arguing that 13 days does not break continuous residence. How do we judge that? It's difficult to answer to that argument. But taking account the other situation of the non-permanent resident, it would be probably three months would be still okay. And I suppose if you take people who have a green card or a lawful permanent resident, if they live up to six months every year, they're still a resident after 180 days, if the person returns to the United States, they begin to put into question. There's no legal limit, and I can see that. However, we know if someone resides in California and filed taxes, even if he goes out of the country for two, three weeks, he will be still considered as a resident because he lives generally as a house. He's filed taxes. I'm having trouble remembering the case name. You may be able to help me. Judge Hall wrote the opinion, and the question was whether or not someone had been residing in the United States. He was an agricultural worker, and he lived in the United States essentially nine months out of the year and was returning to Mexico for about three months out of the year. And Judge Hall construed the term residence to say, well, that's where his principal living place or abode is, and said that he had a residence in the United States. He had no residence in Mexico. Do you remember the name of that case? No, Your Honor. Unfortunately, I don't. Okay. But that case seems to me that tells us that residence has its ordinary meaning, which is to say where are you living, and a two-week trip doesn't interrupt residence. Yes, Your Honor. Sometimes we use domiciled as compared to residence. Yes, that's correct. All right. But the residence definition very clearly excludes intent. Domiciled includes intent. And that's what it says in the case of J. Lamas Blanca. Blanca's lara domiciled as residence is two different notions. Yes. Here's part of the issue. Is your position that someone can come into the United States, be lawfully admitted at that moment, as she was, and then, let's say, it's on a 72-hour, allowing you in for 72 hours, or as a tourist or as a student, you come in, and you overstay whatever that period is, the 72 hours being a student. Is your position, if you reside in the United States continuously for seven years, out of status after whatever the admitted period was, that you've satisfied the statutory requirements here? In other words, is there an incentive here for somebody to overstay their lawful admission in order to meet the seven-year period, to hide out in the United States, and even to purposely overstay their lawful admission? That's a good question. I think the position of Blanca's lara is even if you overstay, satisfy the requirement, as long as you prove maybe that you do some taxes or do some other things. Does it help people or push people to overstay? Maybe. But my position is that the person, yes, if he stayed, he was admitted in any status, and he resided seven years, he satisfied the requirement. And she concedes removability here, correct? That's correct. Okay. So here's the case. It's Alcarez-Garcia v. Ashcroft. It's 293 F. 3rd, 1155, 9th Circuit, 2002, written by Judge Cynthia Holcomb Hall, joined by a certain W. Fletcher who couldn't remember the case name. Judge Kaczynski dissented not on the principle, but on whether there had been sufficient proof that he stayed regularly in the United States nine months out of the year. Judge Hall writes, I think that's your argument. Yes, Your Honor. Was the case that you rely on Blanca's lara presented to the BIA? No, it was not. I mean, and it was, and when the case went before the Board of Immigration Appeal, I was not a lawyer for her. Because, you know, you read their decision and they simply say, well, that's not good enough. It seems if you're right about Blanca's lara, what they say in their decision is at odds with Blanca's lara. Yes. Let's hear from the government and then we'll give you a chance to respond. Thank you, Your Honor. May it please the Court, Jonathan Robbins here on behalf of the respondent Eric Holder. Good morning. There's a lot of convoluted terms of art in this case with respect to what admitted means, what status means, what residence means. I think it's probably easiest to start with what parole is and what parole is not. Now, by the very terms of the statute, parole is not an admission. I don't think there's any real question with regard to that. But what parole is is essentially a legal fiction. The government is granting a humanitarian relief. They're saying we're not going to detain you at the border. We're going to allow you the ability to roam in the country. But for legal purposes, you're still at the border on the outside looking in. And as it relates to residence with respect to cancellation of removal, if you're at the border, you can't be considered to be residing in the United States. What do you do with Blanca's lara, which seems to have some language, as the other side suggests? Right. Well, he is right that in Blanca's lara, the alien in that case came in on a border crossing card, overstayed in unlawful status. And what the board said in that case is that there was no requirement that you maintain a lawful status with the border crossing card and that in that case, the alien could accrue the seven years of continuous residence. But advanced parole was not relevant in that particular case. And advanced parole is essentially a cutoff. It's because the alien has been. Let me cut this short because I think I know where you're going and I can save you a minute. So you're not arguing that the initial entry in 1990 wasn't an admission. You're arguing that the trip to Mexico, after which she was paroled back in, interrupts. Yes, exactly. Just as the board said. So you're not contesting that coming in on the border crossing card was an admission. You say that that was an admission. No, under the board's precedent, that is an admission, albeit only for 72 hours. So the board was wrong in this case. No, not in this case because Blanca's lara. But when it said that that wasn't enough to start the clock running in her favor. No, the wording was a little unusual with respect to when it said we don't believe the starting point is 1990. What they meant to say is we can't start it there because the I think if you read it again, you'll see that what they were saying was that the broken continuous presence based on the advanced parole from 1996 to 1997 means that they weren't going to start counting the seven years at 1990. I don't think it's what they were saying is that you couldn't, theoretically, had there been no advanced parole, not start at 1990. I think it also helps to look at the chronology in this case. Particularly, again, in 1990 she came in on the border crossing card, overstayed the 72 hours, and was in unlawful status for a certain period of time. So she comes out of status after 72 hours. Correct. But again, now she eventually needs to visit her mother who is ill. And so DHS has something available for her to preserve her adjustment of status application. And she avails herself of that humanitarian relief, advanced parole. Now, it's important to remember at this point cancellation of removal was not at issue. There was no need to cancel any removal because she had yet smuggled in an alien as she later would. So she avails herself of this benefit. But part of availing yourself of that benefit is that you're now within the terms of the statute as to what a parolee is. And a parolee is not admitted in any status by the terms of the statute. But she doesn't need a second admission. All she needs is seven years of continuous residence after admission. So the question is whether those two weeks, not quite two weeks, December through early January, interrupts the continuous residence. And again. Isn't that right? Yes, you're right. And the fact that she comes in on parole when she comes back in doesn't tell us whether or not it was interrupted within the meaning of continuous residence. Well, again, I would start back at what I said at the beginning. But because she's a parolee and technically considered to be at the border on the outside looking in, you can't simultaneously be considered to be applying in the United States. How do you distinguish Judge Hall's opinion and Alcarez-Garcia, the one I just read from? With respect to, well, I don't know if advanced parole was relevant in that particular case. Well, he's in and out of that country, in and out of the United States over a long period. He resides in the United States nine months out of the year. He is physically present in Mexico for three months out of every year. And Judge Hall concludes, and I agreed with her, indeed, Judge Kaczynski agreed with her, that the fact that he was in Mexico for three months out of the year didn't mean that his residence was not in the United States. So she's out of the United States for less than two weeks. Yes. And she does everything according to the book so that when she comes back in, she doesn't come back in illegally. I don't see how if three months allows it to be continuous, two weeks prevents it from being continuous. Well, again, it's because once she accepted the parole, the humanitarian relief, she's bound to be considered at the border again. So she's broken the continuous residence by agreeing to be in a status that is not part of the United States. So if she snuck back in, it would be okay? All I know is that the statute specifically says the parole is not an admission. If you're not admitted into the United States, how can you be considered to have residing there in any sense? Again, at that point, it's broken. Put yourself in a step outside the statutory language for just a moment and think about her situation. She's lawfully admitted. Her mother is sick. She wants to make sure she can get out of the country legally, even though she's out of status. So she applies for advanced parole, which you've characterized as a humanitarian relief, visits her sick mother, 13 days, comes back in, apparently parole issue. From her standpoint, she's doing everything she ought to do to get back in the country legally, and if we assume three months out of the country does not break continuous residence, I think we have to assume 13 days does not break continuous residence. Why rely on the technicality of your saying that the statute says advanced parole or coming back in breaks continuous residence? It's a new admission. It doesn't make sense logically. Okay. When she we're looking at it, I think the way Your Honors are looking at it is that why should this parole break her status? But let me see if I can explain it. In 1990 to 1996, when she needed advanced parole in order to leave the country, she wasn't actually accruing, she wasn't trying to accrue seven years of continuous residence. The only relief that she needed was advanced parole, and she got it, and it worked because she later adjusted on her preserved application. The fact that she later smuggled in an alien and now needs to find a relief for a later form of removal, she's subject to what happened to her in the past as it affects that cancellation of removal. But at the time she applied for advanced parole, cancellation of removal wasn't even a gleam in her eye. So to say that she was, at the time she was applying for advanced parole, that she was somehow trying to preserve seven years of continuous residence. She didn't want to have an illegal border crossing. I understand why she wanted advanced parole. She didn't want to be arrested for an illegal crossing. Exactly. Well, so? She wanted to be re-allowed to go back inside the country. Let me read you the statutory definition of residence for this purpose. The term, and this is 8 U.S.C. 1101 A.33. The term residence means the place of general abode. The place of general abode of a person means his principal actual dwelling place, in fact, without regard to intent. But the problem is? I want to ask you a question on that. She leaves for just under two weeks. If we're just talking ordinary language, is she still residing in her principal actual dwelling place in the United States? If we were only looking at residence, yes, but we're not. But I want to know why aren't we only looking at residence? Because the statute that she wants to qualify under requires seven years of continuous residence. It says nothing about parole. It requires that she have been admitted in any status at the beginning, which the government has conceded she satisfies. And it says nothing in the statute about continuous residence that says residence will be interrupted by exiting the United States, staying for under two weeks, coming back in under legal status. I just don't see it in the statute. Again, it wouldn't be in the statute. There would be no reason to because when she applied for parole, she wasn't looking to create continuous residence. There was no cancellation of removal at that time. The only thing she wanted was to be able to be let back in the country. She wasn't looking to preserve. What does Arabelli and Yarabelli tell us? Well, that case doesn't really apply. What happened in that case was the aliens had sought advance parole from DHS, and when they came back in, DHS basically found that they were inadmissible. And that case was determining what a departure meant rather than an admission into the United States. So what they said, it would frustrate the statute or frustrate the very purpose of advance parole if the agency could just find them inadmissible as soon as they got back in and then basically nullify the preservation of their adjustment of status. So that doesn't really apply to this particular case. So in your view, then, notwithstanding what the BIA said in this case, she was accruing time towards the seven years starting in 1990. She almost had it until she went out for this 13 days. Yes, and I would reemphasize that we're not just looking at— Does that make any sense? I mean, she goes out. They say go out. She comes back in 13 days, and all of a sudden they say, well, time out. So you're saying even though she was on an illegal status, she was accruing time, but she goes out on a legal status, and therefore she's not. Again, she's not going out on a legal status. The only permission that she's getting is to enter the country and not be detained at the border. But she's agreeing that when she gets to the border, she doesn't have any status. That's what the very nature of parole is. And again, all the time that she's been accruing is just wiped out. It is because she resets it. Again, we're not just looking at continuous residence. What we're looking at is a combination of continuous residence and any status. And why aren't we just looking at continuous residence? Because that's the only requirement in the statute. No, it's not. It's continuous residence after having been admitted in any status. Any status. But you're not contesting that she's been admitted in a status. That's the problem. But what I'm saying is when she avails herself of parole, after having been in unlawful status, after coming in and negating the terms of the border crossing card, I see that as a problem. Well, you aren't. You didn't cite Alcarez-Garcia. Was there some reason you didn't cite that case? This is the nine months in the United States and out and back and forth and back and forth. Some reason you didn't cite that case? Well, I mean, I don't think that. Maybe you just weren't aware of the case. No, I don't think that. You were aware of the case? I mean, I wasn't aware of that specific case, but I don't think. Well, that's the answer then. Okay. I don't think it applies particularly because it doesn't. That residence, I don't know whether it had to do with cancellation of removal or not, but. It had to do with whether or not this person had continuous residence. But it also didn't, I believe, include advanced parole either, which is specifically. I have another question. Is she eligible for cancellation even though she's been caught alien smuggling? I believe she might be prima facie eligible if she has the seven years because for the. . . Cancellation is different for a lawful permanent residence than it is for unlawful residence. She had LPR status. LPR, yes. That distinguishes this case. So the moral character doesn't apply. Right. Okay. Thank you. Thank you for your time, Your Honors. Now, we took you over. Would you like one minute? Thank you, Your Honor. To go back to the Edouard de Blancas-Lara, we have only the definition of residence, which is the place of high principle above, combined with the matter of Arabelli. And Arabelli, as it's mentioned in the case, mentioned that the advanced parole is, quote, qualitatively different from the parole because the person, when. . . And I'm going to cite the case. In short, an undocumented alien's departure under a grant of advanced parole is qualitatively different from other departure because it presupposes that he will be permitted to return to the United States thereafter and that he will, upon return, continue to pursue the adjustment of status that he filed before departing. It's another world than the regular parole. And Arabelli came in 2012 after the BIA decided in 2008. Therefore, I mean, if this Court would hesitate to grant a petition at least, it should be remanded to the BIA so the BIA re-evaluate our case in the light of matter of Arabelli if there was an argument that Arabelli applies in specific situation. Okay. Thank you very much. Thank you. Thank both sides for their argument. And Galindo de Rodriguez versus Holder. And that case is now submitted for decision. The next case is Maciel versus Holder. Thank you.
judges: Stein, Trott, Fletcher